UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re:<br>MCK Millennium Centre Retail LLC<br><br><br><br>Debtor(s) | BK No.:  16-06369<br><br>Chapter: **11**<br>Honorable Jack B. Schmetterer |

Dkt #80

### STIPULATION AND FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C.§§ 363 AND 364, AND (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364

This matter comes before this Court on the Debtor's Motion (the "Motion") dated May 20, 2016 [Doc. No. 80], seeking the entry of an Final Order (the "Final Order") (a) authorizing, pursuant to Section 363(c) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), on a limited basis, use of cash and cash equivalents constituting "Cash Collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code) in the ordinary course of business and pursuant to the Budget (as defined herein); and (b) providing, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, adequate protection to the Lender, as senior secured creditor, with respect to any diminution in the value of the interest of MLMT 2005-MKB2 Millennium Centre Retail LLC (the "Lender") in the Prepetition Collateral (as that term is defined below) for the use of all Cash Collateral and the use, sale or lease of the Collateral (other than the Cash Collateral) and the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code; the Final Hearing having been held before this Court; due and sufficient notice of the Motion and the Final Hearing having been given; and upon the entire record made at the Final Hearing, and this Court having found good and sufficient cause appearing therefore:

WITHOUT PREJUDICE TO ANY OTHER PARTY, THE DEBTOR AND LENDER HEREBY STIPULATE AND AGREE THAT:

A. On February 25, 2016 (the "Petition Date"), MCK Millennium Centre Retail, LLC ("Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") commencing a chapter 11 case (the "Case").

B. Lender is the holder of a secured loan (the "Loan") to Debtor in the original principal amount of $11,200,000.00.

C. The Loan is evidenced by and reflected in, among other things, the documents (collectively, with all other documents executed, securing, assigning or otherwise relating to the Loan or delivered in connection with the Loan, the "Loan Documents"):

i. Mortgage, Security Agreement, Assignment of Rents and Fixture Filing dated as of December 23, 2004, executed by Mortgagor to and for the benefit of Merrill Lynch Mortgage Lending, Inc. (the "Original Lender"), and recorded with the Cook County Recorder of Deeds on December 23, 2004, as document 0435832083 (the "Mortgage");

ii. Promissory Note dated December 23, 2004 (the "Note"), in the principal amount of Eleven Million Two Hundred Thousand Dollars ($11,200,000.00);

iii. Assignment of Leases and Rents dated as of December 23, 2004, and recorded with the Cook County Recorder of Deeds on December 23, 2004 as document 0435832084 (the "ALR");

iv. Financing Statement dated as of December 23, 2004, and recorded with the Cook County

Recorder of Deeds on December 23, 2004 as document 0435832085 (the "Financing Statement");

       v. Assignment of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing and Assignment of Assignment of Leases and Rents dated as of March 29, 2005, and recorded with the Cook County Recorder of Deeds on July 29, 2005 as document 0521034006, assigning the rights in the Mortgage, Note, and ALR from the Original Lender to LaSalle Bank National Association, as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MKB2, Commercial Mortgage Pass-Through Certificates, Series 2005-MKB2 ("LaSalle Bank");

       vi. Assignment of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing and Assignment of Assignment of Leases and Rents dated as of January 2, 2008, and recorded with the Cook County Recorder of Deeds on September 15, 2008 as document 0825922088, assigning the rights in the Mortgage, Note, and ALR from LaSalle Bank to Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-MKB2, Commercial Mortgage Pass-Through Certificates, Series 2005-MKB2 ("Wells Fargo");

       vii. Assignment of Mortgage, Security Agreement, Assignment of Rents and Fixture Filing and Assignment of Assignment of Leases and Rents dated as of March 12, 2015, and recorded with the Cook County Recorder of Deeds on March 12, 2015 as document 1507108106, along with that certain Omnibus Assignment and that certain Allonge, assigning the rights in the Mortgage, Note, and ALR from Wells Fargo to Lender, and a copy of that certain Indemnity Agreement effective as of March 12, 2015 between Wells Fargo and Lender;

       viii. UCC Financing Statement Amendment recorded with the Cook County Recorder of Deeds on July 29, 2005 as document 0521034007, assigning the rights in the Financing Statement from the Original Lender to LaSalle Bank;

       ix. UCC Financing Statement Amendment recorded with the Cook County Recorder of Deeds on September 15, 2008 as document 0825922089, assigning the rights in the Financing Statement from LaSalle Bank to Wells Fargo;

       x. UCC Financing Statement Amendment recorded with the Cook County Recorder of Deeds on January 29, 2015 as document 09339459, assigning the rights in the Financing Statement from Wells Fargo to Lender;

       D. Pursuant to the Loan Documents, the Loan is secured by a first priority and unavoidable mortgage against and security interest in all of Debtor's real and personal property (collectively, the "Non-Cash Collateral").

       E. All post-petition proceeds of the Collateral, and all cash from the products, offspring, rents or profits from such Collateral, constitute cash collateral as defined in section 363 of Bankruptcy Code (the "Cash Collateral"; collectively with the Non-Cash Collateral, the "Collateral").

       F. As of the Petition Date, Debtor held cash in the aggregate amount of $232,266.30 (the "Prepetition Cash"; collectively with the Cash Collateral, the "Cash"). Debtor asserts that the Prepetition Cash is not Cash Collateral and Lender asserts that the Prepetition Cash is Cash Collateral.

       G. In connection with the Case, Debtor has requested to use the Cash Collateral and that Lender not seek other relief from the Court, including but not limited to dismissal of the Case or relief from the automatic stay.

       H. Allowance of Lender Claims. Subject solely to paragraph 3 of this Order, Lender shall have an allowed secured claim (the "Allowed Lender Claim") as follows:

    i. Unpaid principal in the amount of $9,276,151.95 (the "UPB");

    ii. Accrued and unpaid interest at the non-default rate in the amount of $433,814.71, as of

March 1, 2016, as set forth in the payoff statement previously delivered by Lender to Debtor dated March 11, 2016, which interest shall continue to accrue, in accordance with the Loan Documents (to the extent not paid pursuant to paragraph 8 of this Order), at the non-default rate provided for in the Loan Documents through and including the date in payment in full of the Allowed Lender Claim;

   iii. Accrued and unpaid interest at the default rate in the amount of $438,717.24, plus late charges in the amount of $5,807.64, each as of March 1, 2016 (reflecting default interest calculated from and after January 2, 2015), which interest shall continue to accrue, in accordance with the Loan Documents, at the default rate provided for in the Loan Documents through and including the date in payment in full of the Allowed Lender Claim; and

   iv. Advances for attorneys' fees and disbursements, real estate taxes and other items in the aggregate amount of $594,521.10, plus interest thereon in the amount of $21,219.54, each as of March 1, 2016, which amounts will continue to accrue to the extent such advances are unpaid and to the extent Lender continues to incur any further attorneys' fees and disbursements and to the extent makes any other advances;

   v. Less credits for amounts held in reserve and in suspense in the amounts of $18,183.12 and $266,070.88, respectively, each as of March 1, 2016.

  I. **No Defenses.** Debtor has no defenses, setoffs or reductions to the payment to the Allowed Lender Claim (other than the automatic stay provided by section 362 of the Bankruptcy Code) or any rights of setoff or recoupment, and may not challenge the allowance of such Allowed Lender Claim except as expressly set forth in Paragraph 3 of this Order. Without limiting the foregoing, Debtor, on behalf of itself and its estate, irrevocably waives and releases any right it might otherwise have to object to the Allowed Lender except as expressly set forth in Paragraph 3 of this Order.

  J. **Perfection and Acknowledgement of Liens and Security Interests.** Debtor stipulates, acknowledges and agrees that the Allowed Lender Claim is secured by a first priority lien against and security interest in the Collateral, which lien and security interest is duly perfected and unavoidable. Debtor, on behalf of itself and its estate, irrevocably waives and releases any right it might otherwise have to object to the perfection or priority of such lien and security interest or to seek the avoidance thereof.

  K. **Loan History.** To the extent not provided before the date of the execution of this Order, Lender will promptly provide a history of the loan, showing in reasonable detail payments received, escrows and reserves and the application of same (the "Loan History").

  L. An urgent need exists for the Debtor to use Cash Collateral to continue to operate its business and the Debtor has requested authority to do so as specified in the Budget (defined below) in order to generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets, and to afford the Debtor to seek approval for additional cash collateral use, subject to and within the limited imposed by the mutually agreed Budget (as defined below) and further subject to the terms and conditions of this Final Order.

  M. The use of Cash Collateral is necessary to prevent immediate and irreparable harm to the Debtor's estate and this Final Order provides solely for the use of Cash Collateral for these limited purposes.

  N. Lender is willing to consent to the use of such Cash Collateral by Debtor and to forbear from seeking such additional relief from the Court in accordance with and subject to the terms, conditions and limitations of this Final Order. Lender claims it will not be adequately protected, as defined in sections 361 and 363 of the Bankruptcy Code, without conditioning Debtor's use of the Cash Collateral on the conditions and limitations of this Final Order. Lender has consented to the Debtor's use of Cash Collateral conditioned upon the express terms and conditions of this Final Order.

 ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND, AS

APPLICABLE, STIPULATED THAT, EFFECTIVE IMMEDIATELY:

1. The Motion, is granted on an Final basis, pursuant to the terms and conditions set forth in this Final Order and any objections thereto that have not previously been withdrawn are overruled. This Final Order is valid immediately and fully effective upon its entry.

2. This Court has jurisdiction the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. Debtor's Limited Right to Object to Lender Allowed Claim. This paragraph binds the Debtor and no other parties in interest. Within fifteen (15) calendar days after receipt by Debtor's counsel of the Loan History (the "Objection Deadline"), Debtor may object to the Allowed Lender Claim solely as follows, and on no other grounds:

   i. If the Loan History does not reflect the application of one or more payments in accordance with the Loan Documents actually made by or on behalf of Debtor and Debtor provides reasonable evidence (e.g., cancelled check) establishing such payment;

   ii. If the Loan History does not reflect the application of any amounts held in escrow or reserves in accordance with the Loan Documents and Debtor provides reasonable evidence of same; or

   iii. If the Loan History contains an arithmetical or other mathematical error.

4. Any objection not raised by Debtor on or before the Objection Deadline shall be deemed to be irrevocably waived and released. Any objection raised on or before the Objection Deadline shall be in writing (which writing may be an email), shall be provided to Lender's counsel and shall not be filed with the Court, except as provided below. After receipt of a timely objection, Lender shall, within fifteen (15) calendar days of receipt thereof by Lender's counsel, either adjust the Allowed Lender Claim in accordance with such objection or engage in discussions with Debtor or Debtor's counsel with respect to a consensual resolution of such objection. In the event that a consensual resolution of such objection is not reached by Debtor and Lender within fifteen (15) calendar days of receipt thereof by Lender's counsel, then Debtor may file a claims objection, solely on the grounds set forth in the objection previously delivered to Lender's counsel, with the Court. Any such claims objection shall be filed on or before the date that is thirty (30) days of receipt of the initial objection by Lender's counsel; provided, however, that the deadline for filing a claims objection with the Court may be extended by mutual written agreement of Debtor and Lender (which may be by email).

5. Use of Cash Collateral. Debtor is hereby authorized to use the Cash Collateral to pay Debtor's actual, necessary, post-petition expenses, only in accordance with the budget attached hereto as Exhibit A (the "Budget") and the terms of this Order. The Budget may provide for the payment of retainers to counsel for Debtor in accordance with the applications for same previously submitted to the Court. Debtor shall not (i) prepay any expenses without the prior written consent of Lender or (ii) use the Cash Collateral to pay expenses of any Insider (as defined in the Bankruptcy Code) or Affiliate (as defined in the Bankruptcy Code) of Debtor. The Budget may be modified or amended with the written approval of Lender. Notwithstanding the foregoing, no Cash Collateral shall be used for any fees, disbursements or expenses of any party, including Debtor, any Insider or Affiliate thereof, or any official committee appointed in the case of Debtor, or any professional employed by any party, in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against Lender (directly or indirectly), including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to Lender's security interests in and liens against the Collateral, or the Allowed Lender Claim (including the amount thereof, except as expressly provided in paragraph 3 of this Order); provided, however, that an official committee of unsecured creditors appointed in Debtor's case shall be permitted to use Cash Collateral in an amount not to exceed $10,000 to investigate factual and legal matters relevant to Debtor's admissions and releases contained in paragraphs A through I, and L, and 1 through 2 of this Order. For purposes of this Order, including paragraphs 8 [Budget], 7 [Replacement

Liens], 9 [Superpriority Claims], 10 [No Surcharge], 11 [Taxes] and 16 [Deposit of Cash Collateral], the Prepetition Cash shall be treated as if it is Cash Collateral.

6. Budget. Debtor shall provide Lender with (i) a bi-weekly budget-to-actual comparison due each Tuesday for the prior week, and (ii) any other financial information reasonably requested by Lender, to be promptly provided by Debtor following a written request for the same. Item (i) herein shall be certified as true and correct by an officer of Debtor.

7. Replacement Liens. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, Lender is hereby granted replacement liens and security interests on all assets of Debtor and Debtor's estate, whether now existing or hereafter acquired, and the proceeds, income and profits and offspring of any of the foregoing, to secure Debtor's use of the Cash Collateral, whether pursuant to this Order or otherwise, solely to the extent there is diminution in value of the Collateral from and after the Petition Date which is as a result of, or arises from, or is attributable to, the imposition of the automatic stay, or the use, sale, lease or grant of such Collateral (the "Replacement Liens"). The Replacement Liens (i) are subordinate only to the following items: (a) any accrued and unpaid U.S. Trustee fees, (b) all accrued but unpaid expenses set forth in the Budget through the date of delivery of the Termination Notice (as defined below), and (c) any prior existing, validly perfected and unavoidable liens and security interests in Debtor's assets (the "Permitted Prior Liens"), (ii) shall attach with the same rights and in the same order of priority that existed as to the Collateral under applicable non-bankruptcy law (including by agreement of Lender) as of the Petition Date, and (iii) are automatically perfected, and (iv) shall attach to the proceeds of any causes of action under sections 502(d), 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"). Debtor shall cooperate with Lender to execute such documents and instruments and do such other things as Lender may reasonably request to evidence the perfection of the Replacement Liens, although such Replacement Liens are deemed perfected without the need for any additional action.

8. Adequate Protection Payments. As additional adequate protection, Debtor shall make monthly cash payments of interest at the non-default rate on the UPB, calculated in accordance with the Loan Documents (i.e., payments in the per diem amount of $1,422.34) to Lender on the first day of each month. To the extent not paid by Debtor, all unpaid interest at the default rate, in accordance with the Loan Documents, and any other amounts due under the Loan Documents shall accrue on and after the Petition Date and shall be part of the Allowed Lender Claim. In the event that the UPB of the Allowed Lender Claim is adjusted in accordance with paragraph 3 (or reduced by the Court following a claims objection permitted under such paragraph), then any adequate protection payment in excess of the amount equal to interest at the non-default rate on the UPB, as adjusted or reduced, shall be applied to reduce the amount of the Allowed Lender Claim.

9. Superpriority Claim. Pursuant to section 507(b) of the Bankruptcy Code, as further adequate protection in addition to the liens and security interests granted to Lender herein, and in the event that the value of the post-petition replacement collateral proves insufficient to enable Lender to collect the aggregate amount of the Cash Collateral used by Debtor pursuant to this Stipulation or otherwise, or in the event the value of the Collateral diminishes during this proceeding, Lender shall be entitled to the benefits of section 507(b) of the Bankruptcy Code (the "Superpriority Claim"), which Superpriority Claim shall be payable from any asset of the Debtor's estate, not including the Avoidance Actions.

10. No Surcharge of Collateral. The Collateral shall not be surcharged pursuant to section 506(c) of the Bankruptcy Code or otherwise.

11. Taxes. Debtor shall timely deposit all post-petition taxes (whether federal, state or local) with the appropriate taxing authorities and timely file appropriate tax returns and, to the extent not otherwise covered by the Budget, may use Cash Collateral to make such payments. Debtor shall timely pay all U.S. Trustee fees.

12. Insurance. Debtor shall maintain insurance with respect to all of the Collateral for all the purposes and in the amounts maintained by Debtor in accordance with the requirements of the Loan

Documents. Such insurance shall contain a standard mortgage clause with Lender named as loss payee, except that Lender shall not be named as loss payee for any particular items of property as to which Lender's liens are not superior to the liens of any other lien claimant.

13. Case Resolution Deadline. On or before October 14, 2016 (the "Case Resolution Deadline"), time being of the essence, Debtor's bankruptcy case shall be resolved by one of the following (each, a "Case Resolution Event"):

a. The closing of a cash sale of the Collateral to a third party purchaser, with the payment in full in cash of the Allowed Lender Claim at the closing of such sale;

b. The closing of a sale of the Collateral to Lender pursuant to a credit bid by Lender; or

c. The closing of a refinancing of the Loan with net proceeds sufficient to pay the Allowed Lender Claim in full in cash at the closing of such refinancing.

12. Implementation of Case Resolution. Debtor shall promptly take such actions as are reasonably necessary to ensure that a Case Resolution Event occurs on or before the Case Resolution Deadline, including but not limited to the filing of a sale motion or a refinancing motion (the "Implementation Motion") on or before July 5, 2016. The Implementation Motion shall seek an order providing for a sale or a refinancing of the Non-Cash Collateral on or before the Case Resolution Deadline. Without limiting the foregoing, the Implementation Motion shall provide for the sale of the Non-Cash Collateral on the third business day following the Case Resolution Deadline (or such other date designated by Lender) to Lender or Lender's designee or nominee pursuant to a credit bid if a sale to a third party or a refinancing shall not have closed on or prior to the Case Resolution Deadline. Debtor shall keep Lender reasonably and promptly informed of Debtor's efforts to sell or refinance the Non-Cash Collateral and shall provide such information regarding the status of such efforts as may be reasonably requested by Lender from time to time.

13. Termination Notice. Upon the occurrence of a Termination Event (as defined below) under this Order, Lender may deliver a notice of same to bankruptcy counsel from Debtor (a "Termination Notice"). Such notice shall be in writing and, if delivered by email, shall be effective upon sending. Upon the occurrence of a Termination Event and the sending of a Termination Notice, (a) Debtor's right to use Cash Collateral shall terminate and (b) Lender shall be entitled to immediately schedule a sale of the Non-Cash Collateral, either to Lender (or to Lender's designee or nominee) or to a third party.

14. Successors and Assigns. The provisions of this Order shall be binding on and inure to the benefit of the assigns, representatives and successors of the parties hereto, including any Trustee appointed under chapter 11 or chapter 7 of the Bankruptcy Code, and all creditors and other parties in interest.

15. Termination of Right to Use Cash Collateral. Debtor's right to use Cash Collateral pursuant to this Order shall expire, unless otherwise agreed by Lender in writing, upon the earliest of any of the following (each, a "Termination Event"): (a) midnight on October 14, 2016, unless extended by the written agreement of Lender and Debtor, (b) appointment of a chapter 11 trustee or an examiner with expanded powers, (c) conversion of the Case to a Chapter 7 case, (d) lifting of the automatic stay to allow Lender or any other secured creditor to foreclose its liens on any material portion of the Collateral, (e) the entry of any order granting relief under section 506(c) of the Bankruptcy Code or otherwise surcharging any of the Collateral, (f) the filing by Debtor, without Lender's prior written consent, of any motion to obtain financing under section 364 of the Bankruptcy Code from any person, or otherwise to grant a lien or security interest on any of the Collateral in favor of any person other than Lender, except to the extent that such motion is in furtherance of a Case Resolution Event, (g) except as otherwise expressly provided in this Order, the filing by Debtor, without Lender's prior written consent, of any motion to sell any of the Collateral, other than to implement a Case Resolution Event, (h) a Case Resolution Event shall not have occurred on or before the Case Resolution Deadline (time being of the essence), (i) the commencement of an adversary proceeding or other litigation by Debtor or any person

acting or purporting to act on behalf of Debtor's estate, or by or on behalf of any Insider or Affiliate of Debtor, against Lender or any affiliate thereof, (j) the filing of a plan of reorganization or liquidation except as consented to in writing by Lender or (k) Debtor's breach of any provision of this Order, which breach is not cured within five (5) business days of the sending of notice of such breach (which notice shall be in writing and may be by email to Debtor's counsel) by Lender to Debtor.

16. Deposit of Cash Collateral. All Cash Collateral shall be deposited into a segregated account in the name of Debtor as a debtor-in-possession (the "Cash Collateral Account"). Such Cash Collateral account shall contain only Cash Collateral and shall not be commingled with any other funds. Lender shall retain any and all rights to such Cash Collateral deposited into the Cash Collateral Account.

17. Reservation of Rights Against Debtor. This Order is reasonable and designed to protect the interests of Lender. Notwithstanding any other provision in this Order, the grant of adequate protection to Lender is without prejudice to the rights of Lender to seek different or additional adequate protection or to request any other relief available under the Bankruptcy Code or applicable non-bankruptcy law, and without prejudice to the right of Debtor or any other party in interest to contest any such request. Nothing in this Order shall obligate Lender with respect to any plan of reorganization that may be proposed in these cases or shall constitute a waiver of any right or remedy of Lender, including the right to seek relief from the automatic stay, to seek conversion or dismissal of these cases, or to oppose confirmation of any plan of reorganization or sale (except as provided in this Order) proposed by Debtor. Nothing in this Order shall constitute an agreement or admission by Lender as to the value of the Collateral or the treatment of their claims under any plan of reorganization. The approval of the Budget does not prohibit any party in interest from objecting to any specific request to allow a claim or other expense that is identified generally in the Budget.

18. Reservation of Rights Against Non-Debtors. Nothing set forth in this Order, nor the transactions contemplated thereby, shall operate to waive any right, claim or remedy against any non-Debtor, including but not limited to any right or claim against any guarantor of the Loan or of Debtor's obligations under the Loan Documents. Without limiting the foregoing, the entry of this Order by the Court is not and shall not be deemed to be a solicitation of or a consent by Lender to the commencement of the Case by Debtor.

19. Effect of Modification. In the event that any court modifies any of the provisions of this Order following a final hearing, such modifications shall not affect the rights or priorities of Lender arising under this Order prior to such modification with respect to the Collateral.

20. Credit Bidding. Without limiting the provisions of any paragraph of this Stipulation, in the event of the sale of any of the Collateral pursuant to section 363 of the Bankruptcy Code or under a plan of reorganization or liquidation, Lender shall have the right (at an auction or otherwise) to credit-bid an amount equal to all or any portion of the Allowed Lender Claim, plus any amounts accrued but unpaid on or after the Petition Date.

21. Waiver of Automatic Stay. The automatic stay of section 362(a) of the Bankruptcy Code is hereby vacated and modified solely to the extent necessary to permit Lender to take all actions necessary to implement this Order.

22. Lender Not Responsible Person. The Debtor stipulates that Lender shall not be construed or deemed to be acting as a "responsible person" or an "owner and operator" or a person in "control" with respect to the governance, management or operation of Debtor or Debtor's business (as such terms, or any similar terms, are used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, as each may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) solely by virtue of the interests, rights and remedies granted to or conferred upon Lender under this Order, including such rights and remedies as may be exercisable by Lender in connection with this Order.

23. Immediate Effectiveness. Notwithstanding Fed. R. Bankr. P. 4001(a)(3) and 6004(h), this

Order shall be immediately effective and enforceable upon entry thereof.

    24. That this Court shall retain further jurisdiction for the purpose of enforcing the terms of said this Order; and

    SO ORDERED, ADJUDGED, DECREED, AND STIPULATED THIS ___ DAY OF ___, 2016

Enter: _____
United States Bankruptcy Judge

Dated: 6/23/16

**Prepared by:**

Jonathan D. Golding, Esq. (ARDC# 6299876)
THE GOLDING LAW OFFICES, PC
500 N. Dearborn Street, 2nd Floor
Chicago, Illinois 60654
Tel: (312) 832-7892 Fax: (312) 755-5720
Email: jgolding@goldinglaw.net

AGREED TO AND CONSENTED TO THIS ___ DAY OF ___, 2016

MCK Millennium Centre Retail, LLC
By: _____
    One of its attorneys

ATTORNEYS FOR THE DEBTOR
Jonathan D. Golding, Esq. (ARDC# 6299876)
THE GOLDING LAW OFFICES, PC
500 N. Dearborn Street, 2nd Floor
Chicago, Illinois 60654

MLMT 2005-MKB2 Millennium Centre Retail LLC
By: _Leslie Allen Bayles_____
    One of its attorneys

ATTORNEYS FOR THE LENDER
Leslie Allen Bayles, Esq. (ARDC #6271855)
Donald Cole, Esq. (ARDC #6299318)
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: (312) 602-5000
Fax: (312) 698-7489
Email: leslie.bayles@bryancave.com
Email: donald.cole@bryancave.com

|  | Income Week 1 | Expenses Week 1 | Week 2 | Income Week 3 | Expenses Week 3 | Week 4 | Income Week 5 | Expenses Week 5 | Week 6 |
|---|---|---|---|---|---|---|---|---|---|
| RENT | 45,798.31 |  | 0 | 53033 |  | 0 | 45798.31 |  | 0 |
| Chiller |  | 9448.17 | 0 |  | 0 | 0 |  | 9448.17 | 0 |
| Facility |  | 4861 | 0 |  | 0 | 0 |  | 4995 | 0 |
| Manag. |  | 5860 | 0 |  | 0 | 0 |  | 5860 | 0 |
| ComEd |  | 600 | 0 |  | 0 | 0 |  | 600 | 0 |
| Parking |  | 300 | 0 |  | 0 | 0 |  | 300 | 0 |
| Accounting |  | 0 | 0 |  | 0 | 0 |  | 500 | 0 |
| RE Tax Res |  | 0 | 0 |  | 24,500 | 0 |  | 0 | 0 |
| Leg Rtnr |  | 0 | 0 |  | 20,000 | 0 |  | 0 | 0 |
| Trash |  | 500 | 0 |  | 0 | 0 |  | 500 | 0 |
| Elev Mtn |  | 0 |  |  | 3622.44 |  |  | 3622.44 | 0 |
| water |  | 3950 |  |  |  |  |  | 3950 | 0 |
| Total | 45,798.31 | 26153.17 | 0 | 53033 | 48100.44 | 0 | 45798.31 | 26153.17 | 0 |

|  |  | Month 1 | Expense Total | 74258.61 |
|---|---|---|---|---|
|  |  |  | Income Total | 98831.3 |
|  |  |  | Net Cash | 24579.17 |

|  | Income Week 7 | Expenses Week 7 | Week 8 | Income Week 9 | Expenses Week 9 | Week 10 | Income Week 11 | Expenses Week 11 | Week 12 |
|---|---|---|---|---|---|---|---|---|---|
| RENT | 53033 |  | 0 | 67760 |  | 0 | 53033 |  | 0 |
| Chiller |  | 0 | 0 |  | 9448.17 | 0 |  | 0 | 0 |
| Facility |  | 0 | 0 |  | 4861 | 0 |  | 0 | 0 |
| Manag. |  | 0 | 0 |  | 5860 | 0 |  | 0 | 0 |
| ComEd |  | 0 | 0 |  | 600 | 0 |  | 0 | 0 |
| Parking |  | 0 | 0 |  | 300 | 0 |  | 0 | 0 |
| Accounting |  | 0 | 0 |  | 0 | 0 |  | 0 | 0 |
| RE Tax Res |  | 24500 | 0 |  | 0 | 0 |  | 24500 | 0 |
| Leg Rtnr |  | 10,000 | 0 |  | 0 | 0 |  | 0 | 0 |
| Trash |  | 0 | 0 |  | 500 | 0 |  | 0 | 0 |
| Elev Mtn |  | 3622,44 | 0 |  | 3622.44 | 0 |  | 3622.44 | 0 |
| water |  |  |  |  |  |  |  |  |  |
| Total | 53033 | 38100.44 | 0 | 67760 | 26153.17 | 0 | 53033 | 28100.44 | 0 |

|  | Month 2 | Expense Total | 64258.61 |  | Month 3 | Expense Total | 54258.61 |
|---|---|---|---|---|---|---|---|
|  |  | Income Total | 98331.3 |  |  | Income Total | 110793.9 |
|  |  | Net Cash | 34579.17 |  |  | Net Cash | 44579.17 |

[signature]